UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL CASTRELLON, | No. 2:24-cv-01622 SCR P |
| Plaintiff, | |
| v. | ORDER |
| JEFF LYNCH, et al., | |
| Defendants. | |

Plaintiff is a state inmate who filed this civil rights action pursuant to 42 U.S.C. § 1983 without a lawyer. Pending before the undersigned is plaintiff's complaint for screening (ECF No. 1) and motions to proceed in forma pauperis (ECF Nos. 2, 10).

**IN FORMA PAUPERIS**

Plaintiff has requested leave to proceed without paying the full filing fee for this action and submitted a declaration showing that he cannot afford to pay the entire filing fee. See 28 U.S.C. § 1915(a)(2). Accordingly, plaintiff's motion to proceed in forma pauperis (ECF No. 2) is granted.[1] This means that plaintiff is allowed to pay the $350.00 filing fee in monthly installments that are taken from the inmate's trust account rather than in one lump sum. 28 U.S.C. §§ 1914(a). As part of this order, the prison is required to remove an initial partial filing

---

[1] Plaintiff later refiled the same application (ECF No. 10), which will be denied as moot.

1

fee from plaintiff's trust account. See 28 U.S.C. § 1915(b)(1). A separate order directed to CDCR requires monthly payments of twenty percent of the prior month's income to be taken from plaintiff's trust account. These payments will be taken until the $350 filing fee is paid in full. See 28 U.S.C. § 1915(b)(2).

**STATUTORY SCREENING**

The court is required to screen complaints brought by prisoners seeking relief against "a governmental entity or officer or employee of a governmental entity." 28 U.S.C. § 1915A(a). In performing this screening function, the court must dismiss any claim that "(1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief." Id. § 1915A(b). A claim is legally frivolous when it lacks an arguable basis either in law or in fact. Neitzke v. Williams, 490 U.S. 319, 325 (1989). The court may dismiss a claim as frivolous if it is based on an indisputably meritless legal theory or factual contentions that are baseless. Neitzke, 490 U.S. at 327. The critical inquiry is whether a constitutional claim, however inartfully pleaded, has an arguable legal and factual basis. See Jackson v. Arizona, 885 F.2d 639, 640 (9th Cir. 1989).

In order to avoid dismissal for failure to state a claim a complaint must contain more than "naked assertions," "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555-557 (2007). In other words, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). A claim upon which the court can grant relief has facial plausibility. Twombly, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678. When considering whether a complaint states a claim, the court must accept the allegations as true, Erickson v. Pardus, 551 U.S. 89, 93-94 (2007), and construe the complaint in the light most favorable to the plaintiff, Scheuer v. Rhodes, 416 U.S. 232, 236 (1974).

/////

/////

**PLAINTIFF'S COMPLAINT**

I.  **Factual Allegations of the Complaint**[2]

A.  **Defendants and Claims for Relief**

Plaintiff was at all relevant times incarcerated at California State Prison, Sacramento. (ECF No. 1 at 9.)  The complaint names eight defendants: (1) M. Tsvetkov, a correctional officer ("C/O") sued in his individual capacity; (2) B. Waldron, a C/O sued in his individual capacity; (3) John Doe No. 1, a C/O sued in his individual capacity; (4) John Doe No. 2, a C/O sued in his individual capacity; (5) John Doe No. 3, a C/O sued in his individual; (6) A. Chavez, a correctional sergeant sued in his individual capacity; (7) J. Macomber, Secretary of the California Department of Corrections and Rehabilitation ("CDCR"), sued in his individual and official capacities; and (8) J. Lynch.  (Id. at 10.)

Plaintiff alleges various violations of his First, Eighth, and Fourteenth Amendment rights against all defendants.  (See ECF No. 1 at 18-27.)  He seeks a declaratory judgment that defendants' actions violated his constitutional rights; injunctive relief to "restore his rights"; $75,000 in compensatory damages, $10,000 in nominal damages, and $100,000 in punitive damages from each defendant; and the costs of suit and attorneys' fees.  (Id. at 27-28.)

B.  **Dayroom Incident on October 12, 2022**

Plaintiff was housed on A-Facility in Building 7, Cell-207 on October 12, 2022, and in the dayroom that evening.  (ECF No. 1 at 11.)  At about 7:30 p.m., a fist fight erupted during dayroom recreation between two prisoners that did not involve plaintiff.  All prisoners in the dayroom were ordered to "get down."  Plaintiff complied and sat down on the floor.  (Id., ¶ 3.)

Defendant John Doe No. 1 approached plaintiff and told him to get up and move away from the area to make room for responding officers. (ECF No. 1 at 11, ¶ 4.)   When plaintiff got up in compliance with John Doe No. 1's order, he was shot by the "block gun" at his left elbow. (Id. at 12.)  Plaintiff yelled out in pain and asked for medical attention, but defendant John Doe No. 2 told him to go to his assigned cell.  Plaintiff pleaded with John Doe No. 2 to have his

---

[2]  Plaintiff cites to exhibits throughout his complaint, but no such exhibits were attached to the document.

3

obviously injured elbow, which was "severely bruised" and "100% disabled" (id., ¶ 7), examined by medical staff.  Defendant John Doe No. 2 became more demanding and yelled, "Take it to your cell!"  (Id., ¶ 8.)  Plaintiff reluctantly walked back to his cell.  (Id. at 13, ¶ 9.)

### C.  Grievance, Appeal Log No. 317336

Plaintiff is illiterate, has mental health diagnoses, and is a participant in the facility's mental health "enhanced outpatient program," or EOP.  (ECF No. 1 at 13, ¶ 10.)  He obtained assistance to write a CDCR grievance about the incident in the dayroom and submitted in on October 14, 2022.  (Id.)  The grievance named John Doe No. 1, John Doe No. 2, and John Doe No. 3 (the tower officer that shot plaintiff with the block gun).  (Id., ¶ 11.)  The grievance was designated Appeal Log No. 317336.  (Id.)

### D.  Alleged Cell Attack, November 29, 2022

On November 29, 2022, defendant Tsvetkov opened the electronic door for inmate Woods to enter Building 7, knowing that Woods did not live there and instead lived in Building 6.  (ECF No. 1 at 14, ¶ 13.)  Once inmate Woods was inside the building, defendant Waldron, who also knew Woods did not live in Budling 7, asked "What was his business in A-7?"  (Id., ¶ 14.)  An inmate Davis responded that he needed to talk to Woods "real fast."  (Id., ¶ 15.)  Defendant Waldron told Woods to "make it fast" and then return to his building.  (Id. at 14-15, ¶ 15.)

Once inside, inmate Woods and an inmate Duarte made their way to plaintiff's cell.  (ECF No. 1 at 15, ¶¶ 16-17.)  Defendant Tsvetkov then opened the electronic door to plaintiff's cell.  (Id., ¶ 18.)  Inmates Woods and Duarte entered plaintiff's cell and attacked him as he laid in bed asleep.  (Id. at 15-16, ¶¶ 18-19.)  Plaintiff reacted and struck inmate Woods in the face.  Inmate Davis then joined Woods and the two of them imposed further injuries on plaintiff.  (Id., ¶ 20.)  Defendant Tsvetkov fired two rounds of his 40 mm launcher, which appeared to be aimed at plaintiff when it was obvious plaintiff was the victim.  (Id., ¶ 21.)  One round struck plaintiff in the face, resulting in a broken nose, missing teeth, cuts, abrasions, lacerations to his head and facial areas, and pain everywhere in his upper body.  (Id. at 17, ¶¶ 22-23.)

/////

/////

## II. Claims for Which a Response Will Be Required

### A. Eighth Amendment Failure to Protect

The complaint alleges that defendants Tsvetkov and Waldron failed to protect him in violation of the Eighth Amendment. (ECF No. 1 at 25, ¶ 10.) To state an Eighth Amendment claim that a prison official failed to protect, a plaintiff must allege facts showing that (1) the official's act or omission was objectively, sufficiently serious; and (2) the official was deliberately indifferent to inmate's health or safety. Farmer v. Brennan, 511 U.S. 825, 834 (1994); Hearns v. Terhune, 413 F.3d 1036, 1042 (9th Cir. 2005). Put another way, a failure to protect may rise to the level of an Eighth Amendment violation where prison officials know of and disregarded a substantial risk of serious harm to the plaintiff. See Farmer, 511 U.S. at 847; Hearns, 413 F.3d at 1040.

For screening purposes, the undersigned finds that plaintiff has adequately pled a failure to protect claim against defendants Tsvetkov and Waldron. The allegations that defendants Tsvetkov and Waldron allowed and facilitated an unauthorized inmate to enter the building present an obvious safety risk. See Farmer, 511 U.S. at 842 ("[A]n Eighth Amendment claimant need not show that a prison official acted or failed to act believing that harm actually would befall an inmate; it is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm."). Further, the allegations that Waldron confronted inmate Woods and expressly permitted him to enter Building 7, and that Tsvetkov opened the electronic doors to both Building 7 and plaintiff's cell, are sufficient at screening to establish their respective deliberate indifference to those risks. Accordingly, the complaint states a cognizable failure to protect claim against defendants Tsvetkov and Waldron.

### B. Eighth Amendment Deliberate Indifference to Serious Medical Needs

Plaintiff alleges John Does Nos. 1-3 were deliberately indifferent to his injured elbow during the incident on October 12, 2022, in violation of the Eighth Amendment. (ECF No. 20, ¶ 5; id. at 23, ¶ 2.)

Denial or delay of medical care for a prisoner's serious medical needs may constitute a violation of the prisoner's Eighth and Fourteenth Amendment rights. Estelle v. Gamble, 429 U.S.

1  97, 104-05 (1976). An individual is liable for such a violation only when the individual is

2  deliberately indifferent to a prisoner's serious medical needs. Id.; see Jett v. Penner, 439 F.3d

3  1091, 1096 (9th Cir. 2006); Hallett v. Morgan, 296 F.3d 732, 744 (9th Cir. 2002); Lopez v.

4  Smith, 203 F.3d 1122, 1131-32 (9th Cir. 2000).

5  In the Ninth Circuit, the test for deliberate indifference consists of two parts. Jett, 439

6  F.3d at 1096 (citations omitted). First, the plaintiff must show a "serious medical need" by

7  demonstrating that "failure to treat a prisoner's condition could result in further significant injury

8  or the 'unnecessary and wanton infliction of pain.'" Id., citing Estelle, 429 U.S. at 104.

9  "Examples of serious medical needs include '[t]he existence of an injury that a reasonable doctor

10 or patient would find important and worthy of comment or treatment; the presence of a medical

11 condition that significantly affects an individual's daily activities; or the existence of chronic and

12 substantial pain.'" Lopez, 203 F. 3d at 1131-1132 (citation omitted).

13 Second, the plaintiff must show the defendant's response to the need was deliberately

14 indifferent. Jett, 439 F.3d at 1096. This second prong is satisfied by showing (a) a purposeful act

15 or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the

16 indifference. Id. Under this standard, the prison official must not only "be aware of facts from

17 which the inference could be drawn that a substantial risk of serious harm exists," but that person

18 "must also draw the inference." Farmer, 511 U.S. at 837. This "subjective approach" focuses

19 only "on what a defendant's mental attitude actually was." Id. at 839. A showing of merely

20 negligent medical care is not enough to establish a constitutional violation. Frost v. Agnos, 152

21 F.3d 1124, 1130 (9th Cir. 1998), citing Estelle, 429 U.S. at 105-106.

22 The undersigned finds plaintiff has stated a cognizable medical indifference claim against

23 John Doe No. 2 only. The complaint alleges that John Doe No. 2 was present when plaintiff was

24 shot in the elbow with the block gun and refused plaintiff's repeated requests to see medical staff.

25 The undersigned infers from the allegations, including the cause of the injury, plaintiff's

26 descriptions of his elbow as "bruised," "swollen," and "100% disabled," and his outward

27 expressions of pain, that the injury was serious and the need for medical attention was obvious.

28 The complaint, however, does not contain facts suggesting John Doe No. 1 or John Doe

No. 3 were deliberately indifferent to plaintiff's injuries. Accordingly, for screening purposes, the complaint states a cognizable medical indifference claim against John Doe No. 2 only.

### C. Eighth Amendment Excessive Force

Plaintiff alleges that John Does Nos. 1-3 used unnecessary and excessive force against him in violation of the Eighth Amendment. (ECF No. 1 at 18, ¶ 1; id. at 20, ¶ 5.)

The Eighth Amendment prohibits prison officials from inflicting cruel and unusual punishment on inmates which, in excessive force cases, has been defined as "the unnecessary and wanton infliction of pain." Whitley v. Albers, 475 U.S. 312, 319 (1986). "[W]henever prison officials stand accused of using excessive physical force in violation of the Cruel and Unusual Punishments Clause, the core judicial inquiry is… whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Hudson v. McMillan, 503 U.S. 1, 7 (1992). The Ninth Circuit applies a five-factor test to determine whether the use of force was malicious and sadistic: (1) the extent of injury suffered by an inmate; (2) the need for application of force; (3) the relationship between that need and the amount of force used; (4) the threat reasonably perceived by the responsible officials; and (5) any efforts made to temper the severity of the forceful response." Hughes v. Rodriguez, 31 F.4th 1211, 1221 (9th Cir. 2022) (citation omitted).

The undersigned finds that plaintiff has stated an excessive force claim against John Doe No. 3, the tower officer that fired the block gun. The factual allegations, including plaintiff's claim that he was not involved in the fight and following another officer's orders to stand, support the inference that John Doe No. 3's use of force was excessive under the circumstances. Further, plaintiff has minimally stated an excessive force claim against John Doe No. 1. Although John Doe No. 1 did not fire the block gun, he could have reasonably foreseen that his instruction for plaintiff to stand would result in the use of force. "The requisite causal connection [under § 1983] can be established not only by some kind of direct personal participation in the deprivation, but also by setting in motion a series of acts by others which the actor knows or reasonably should know would cause others to inflict the constitutional injury." Murguia v. Langdon, 61 F.4th 1096, 1107 (9th Cir. 2023) (quoting Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978)).

Plaintiff, however, has not alleged sufficient facts to establish John Doe. 2's personal participation in the block gun incident. Accordingly, the undersigned finds that plaintiff has stated a cognizable Eighth Amendment excessive claim against John Does Nos. 1 and 3, but not John Doe No. 2.

### III.     Failure to State a Claim

#### A. Defendants Macomber, Chavez, and Lynch

Plaintiff's complaint does not state any claims for relief against defendants Macomber (in his official or individual capacities), Chavez, or Lynch.

First, as a state official, defendant Macomber cannot be sued in his official capacity for damages. See Arizonans for Official English v. Arizona, 520 U.S. 43, 69 n.24 (1997) ("State officers in their official capacities, like States themselves, are not amenable to suit for damages under § 1983."). While Macomber could hypothetically be sued in his official capacity for prospective injunctive relief under the doctrine of Ex Parte Young, 209 U.S. 123 (1908), plaintiff's requested injunctive relief of "restor[ing] plaintiff's rights" is too vague to survive screening. See West v. Gates, No. CV 20-5356 JFW PVC, 2020 WL 13740398, at *4 (C.D. Cal. Sept. 11, 2020) (screening out official capacity claims for injunctive relief where "it is not clear what specific conduct Plaintiff is seeking to enjoin[.]").

Further, the complaint's allegations do not support supervisorial liability claims against defendants Macomber or Chavez. "A supervisor is only liable for the constitutional violations of … subordinates if the supervisor participated in or directed the violations, or knew of the violations and failed to act to prevent them. There is no respondeat superior liability under [§] 1983." Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989) (citations omitted). Here, the complaint contains only a single conclusory allegation that Chavez's and Macomber's failure to supervise or train their subordinates caused the alleged constitutional violations. (ECF No. 1 at 26, ¶ 13.) The complaint does not otherwise reference Chavez or Macomber or allege their personal involvement in the deprivations of plaintiff's rights. On screening, such "[v]ague and conclusory allegations of official participation in civil rights violations are not sufficient[.]" See Ivey v. Bd. of Regents, 673 F.2d 266, 268 (9th Cir. 1982).

Finally, defendant Jeff Lynch is named on the caption page (ECF No. 1 at 1) but does not otherwise appear in the body of the complaint. Accordingly, plaintiff's complaint fails to state any claims for relief against defendants Macomber, Chavez, or Lynch.

### B. First Amendment Retaliation

The complaint alleges that defendants Tsvetkov and Waldron conspired with defendants John Does Nos. 1-3 to retaliate against plaintiff in violation of his First Amendment rights. Specifically, plaintiff claims that Tsvetkov and Waldron set him up to be attacked in retaliation for plaintiff filing a grievance that named defendants Jon Does Nos. 1-3.

"Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal. Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th Cir. 2005) (citations omitted). "The First Amendment guarantees a prisoner a right to seek redress of grievances from prison authorities[.]" Jones v. Williams, 791 F.3d 1023, 1035 (9th Cir. 2015).

To satisfy the causation element of a retaliation claim, a plaintiff must show that his protected conduct was "the 'substantial' or 'motivating' factor behind the defendant's conduct." Brodheim, 584 F.3d at 1271 (9th Cir. 2009) (citation omitted). "[T]iming can properly be considered as circumstantial evidence of retaliatory intent." Pratt v. Rowland, 65 F.3d 802, 808 (9th Cir. 1995). "Suspect timing alone, however, is insufficient to establish retaliatory motive where there is no allegation that defendants actually knew of a plaintiff's protected activity." See Castaneda v. CDCR, 2018 WL 11474352, at *4 (E.D. Cal. Jan. 23, 2018) (citing Pratt, 65 F.3d at 808.)

While the timing between plaintiff's grievance and the alleged attack – roughly one-and-a-half months – is suspect, the complaint contains no factual allegations that defendants Tsvetkov or Waldron had personal knowledge of the grievance or any affiliation with defendants John Doe Nos. 1-3. Aside from the suspect timing, the complaint lacks any facts connecting the alleged orchestrated attack to plaintiff's grievance. See Castaneda, 2018 WL 11474352, at *4 (screening

out retaliation claim where complaint did not allege that the defendants responsible for adverse transfer were aware of plaintiff's protected activities); Wood v. Yordy, 753 F.3d 899, 905 (9th Cir. 2014) ("[M]ere speculation that defendants acted out of retaliation is not sufficient."). Thus, plaintiff's complaint does not state a First Amendment retaliation claim.

### C. Fourteenth Amendment Equal Protection

"To state a claim under [§ 1983] for a violation of the Equal Protection Clause of the Fourteenth Amendment a plaintiff must show that the defendants acted with an intent or purpose to discriminate against the plaintiff based upon membership in a protected class." Furnace v. Sullivan, 705 F.3d 1021, 1030 (9th Cir. 2013). Here, the complaint contains a single conclusory allegation that "all defendants ha[ve] violated plaintiff's equal protection rights," (ECF No. 1 at 26, ¶ 12), but does not allege plaintiff's membership in any protected class. Accordingly, plaintiff's complaint does not state a cognizable Equal Protection claim.

### IV. Options from Which Plaintiff Must Choose

Based on the court's screening, plaintiff has a choice to make. After selecting an option from the two options listed below, plaintiff must return the attached Notice of Election form to the court within 21 days from the date of this order.

### A. Option No. 1

The first option available to plaintiff is to proceed immediately on his cognizable claims:

(1) Eighth Amendment failure to protect claim against defendants Tsvetkov and Waldron;

(2) Eighth Amendment medical indifference claim against defendant John Doe No. 2; and

(3) Eighth Amendment excessive force claim against defendants John Does No. 1 and 3.

If plaintiff chooses Option No. 1, the court will proceed to immediately serve the complaint and order a response from defendants Tsvetkov and Waldon only. While the use of a Doe defendant is acceptable to withstand dismissal at screening, **plaintiff is advised that the undersigned cannot order the service of John Does No. 1-3 until plaintiff has identified them through discovery and filed a motion to amend the complaint to substitute his real name**. See Mosier v. California Dep't of Corr. & Rehab., 2012 WL 2577524, at *3 (E.D. Cal. July 3, 2012).

////

**B. Option No. 2**

The second option available to plaintiff is to file an amended complaint to fix the problems described above regarding his First Amendment retaliation and Fourteenth Amendment Equal Protection claims, as well as his claims against defendants Macomber, Chavez, and Lynch. If plaintiff chooses this option, the court will set a deadline in a subsequent order to give plaintiff time to file an amended complaint. To decide whether to amend the complaint, the court has attached the relevant legal standards that may govern your claims for relief. See **Attachment A**. Pay particular attention to these standards if you choose to file an amended complaint.

## CONCLUSION

In accordance with the above, IT IS HEREBY ORDERED that:

1. Plaintiff's request for leave to proceed in forma pauperis (ECF No. 2) is GRANTED.

2. Plaintiff's second request for leave to proceed in forma pauperis (ECF No. 10) is DENIED as moot.

3. Plaintiff is obligated to pay the statutory filing fee of $350.00 for this action. Plaintiff is assessed an initial partial filing fee in accordance with the provisions of 28 U.S.C. § 1915(b)(1). All fees shall be collected and paid in accordance with this court's order to the appropriate agency filed concurrently herewith.

4. Plaintiff's claims against defendants Macomber, Chavez, and Lynch do not state claims for which relief can be granted.

5. Plaintiff has the option to proceed immediately on his cognizable claims against defendants Tsvetkov, Waldron, and John Does Nos. 1-3 as set forth above, or to file an amended complaint.

6. Within 21 days from the date of this order, plaintiff shall complete and return the attached Notice of Election form notifying the court whether he wants to proceed on the screened complaint or whether he wants to file an amended complaint.

7. If plaintiff does not return the form, the court will assume that he is choosing to proceed on the complaint as screened and will recommend dismissal without prejudice of defendants Macomber, Chavez, and Lynch, as well as plaintiff's First Amendment retaliation and

Fourteenth Amendment Equal Protection claims.

DATED: June 10, 2025

_____
SEAN C. RIORDAN
UNITED STATES MAGISTRATE JUDGE

UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL CASTRELLON,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>JEFF LYNCH, et al.,<br><br>　　　　Defendants. | No.  2:24-cv-01622 SCR P<br><br><br>NOTICE OF ELECTION |

Check one:

\_\_\_\_\_  Plaintiff wants to proceed immediately on his Eighth Amendment failure to protect claim against defendants Tsvetkov and Waldron, Eighth Amendment medical indifference claim against defendant John Doe No. 2, and Eighth Amendment excessive force claim against defendants John Does No. 1 and 3, without amending the complaint.  Plaintiff understands that by choosing this option, the remaining defendants and claims will be voluntarily dismissed without prejudice pursuant to Federal Rule of Civil Procedure 41(a).

\_\_\_\_\_  Plaintiff wants time to file an amended complaint.

DATED:_____

　　　　　　　　　　　　　　　　　　　_____
　　　　　　　　　　　　　　　　　　　Michael Castrellon
　　　　　　　　　　　　　　　　　　　Plaintiff pro se

1

**ATTACHMENT A**

This Attachment provides, for informational purposes only, the legal standards that may apply to your claims for relief. Pay particular attention to these standards if you choose to file an amended complaint.

**I.      Legal Standards Governing Amended Complaints**

If plaintiff chooses to file an amended complaint, he must demonstrate how the conditions about which he complains resulted in a deprivation of his constitutional rights. Rizzo v. Goode, 423 U.S. 362, 370-71 (1976). Also, the complaint must specifically identify how each named defendant is involved. Arnold v. Int'l Bus. Machs. Corp., 637 F.2d 1350, 1355 (9th Cir. 1981). There can be no liability under 42 U.S.C. § 1983 unless there is some affirmative link or connection between a defendant's actions and the claimed deprivation. Id.; Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978). Furthermore, "[v]ague and conclusory allegations of official participation in civil rights violations are not sufficient." Ivey v. Bd. of Regents, 673 F.2d 266, 268 (9th Cir. 1982) (citations omitted).

Plaintiff is also informed that the court cannot refer to a prior pleading in order to make his amended complaint complete. See Local Rule 220. This is because, as a general rule, an amended complaint replaces the prior complaint. Loux v. Rhay, 375 F.2d 55, 57 (9th Cir. 1967) (citations omitted), overruled in part by Lacey v. Maricopa County, 693 F.3d 896, 928 (9th Cir. 2012). Therefore, in an amended complaint, every claim and every defendant must be included.